United States Court of Appeals,

Fifth Circuit.

No. 94-20866

Summary Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

ONE HUNDRED TWENTY-FOUR THOUSAND EIGHT HUNDRED THIRTEEN DOLLARS ($124,813) IN UNITED STATES CURRENCY, Defendant,

Somnath Sivaskandan, Claimant-Appellant.

May 30, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before SMITH, EMILIO M. GARZA and PARKER, Circuit Judges.

PER CURIAM:

Claimant, Somnath Sivaskandan, appeals the district court's summary judgment in favor of the United States in this civil forfeiture suit.  Finding no error, we affirm.

I. FACTS

On February 10, 1994, Veena Sivamani Sivaskandan, an Indian citizen, was convicted of several federal offenses arising out of her failure to declare $124,813.00 in U.S. currency to customs officials when entering the United States, and her attempted bribery of a government official.  On April 4, 1994, the United States commenced this action seeking forfeiture of the seized funds.  The District Director of the United States Customs Service was designated as the substitute custodian of the currency during the pendency of the action.

1

Somnath Sivaskandan, Veena Sivaskandan's brother, individually and on behalf of his minor daughter, filed a claim for possession of the funds, asserting that he and his minor daughter were the lawful owners of the currency through assignment and inheritance, and that the funds were illegally seized.  The United States moved for summary judgment and adduced evidence that there was probable cause to believe that the currency was subject to seizure and forfeiture under 31 U.S.C. § 5317(c) by virtue of Ms. Sivaskandan's failure to comply with the reporting requirements of § 5316(a) prior to transporting the currency into the United States.

According to the affidavit of a United States Customs Service agent, from May 19, 1993 through July 29, 1993, Ms. Sivaskandan repeatedly offered to pay a United States Foreign Service Officer $130,000.00 in exchange for the issuance of 30 U.S. Non-Immigrant Visas.  Ms. Sivaskandan was told she would have to bring the money to Washington D.C. to consummate the transaction.  On August 14, 1993, Ms. Sivaskandan entered the United States through the Houston Intercontinental Airport.  She told a senior customs inspector that she was not bringing more than $5,000.00 cash or negotiable monetary instruments into the United States and declared that she was carrying $500.00 only.  A search of her bag revealed a small package containing $100 bills concealed in an inside suit pocket, and upon further inspection the inspector discovered twelve $10,000.00 bundles and other currency totalling $124,813.  Ms. Sivaskandan was detained.

During an interview on the night of August 14, Ms. Sivaskandan

2

advised Customs officials that the money belonged to her and represented proceeds from the sale of property and jewelry in India. She claimed that she was sleeping during the flight, but awakened during the video instructing passengers on how to fill out the monetary reporting forms, and obtained the forms from a flight attendant, but did not fill them out because the flight attendant did not help her and she was exhausted. Ms. Sivaskandan admitted that she worked as a flight attendant for Pan Am for two years, and that she successfully completed airline training in Miami. She claimed, however, that she was not instructed about currency reporting requirements. Early the next morning when Ms. Sivaskandan's brother, the claimant, came to the customs office, he gave a statement to customs officials in which he denied any interest in the currency.

In opposition to the government's motion for summary judgment, and relying on *Calero-Toledo v. Pearson Yacht Leasing Co.,*[1] the claimant asserted that he was entitled to the currency because he was its innocent owner and was unaware of any illegal activity. In support of his "innocent owner" defense, the claimant submitted his deceased father's will, which disinherited Veena Sivaskandan, and an affidavit from their mother, a resident of Bombay, India, which stated, in pertinent part:

> After the demise of my husband the said Mr. V.S. Sivaskandan
> in November, 1992, A.D., and while my son [the claimant] was
> and still is in U.S.A. My only dauther [sic] [Veena
> Sivaskandan], aged now 31 years, and who was carrying on a
> business in travel agency in Bombay, induced me, taking

---

[1]416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

advantage of the fact of my affection for her asher [sic] mother as well as my lack of exposure to the outer world experience to part with, periodically, all the jewels and other precious things which my husband kept in his cupboards as per his will and which legally belonged to my granddaughter ... as per the will of my husband ... all this happening over a period of six months from December, 1992 A.D.  In August 1993 A.D., [Sivaskandan] informed me that she was going to U.S.A. in connection with and to expand the business of travel agencies she was carrying on as on that date and thereby induced me to part with the cash ... on an assurance that she would give the equivalent of the said cash ... taken from me by her as well as the value of the jewels and other precious things taken by her from me periodically ... to my son ... as soon as she would successfully complete her business transactions in U.S.A.

In a judgment dated October 4, 1994, and entered October 6, 1994, the district court granted the government's motion for summary judgment.  The district court determined that the funds were "in the possession of Veena Sivaskandan for her use, irrespective of the ultimate obligation she may have had to repay her mother or to disburse them to her brother."  On October 12th, the government moved the district court to reconsider and amend the final judgment.  On November 14, 1994, the claimant filed a notice of appeal.  By order dated November 28th and entered November 30th, the district court denied the motion to reconsider and amend.

## II. DISCUSSION

The United States argues that this court has no jurisdiction over this appeal.  The government's position is that claimant's notice of appeal is a nullity because it was filed prior to the district court's disposition of the government's motion to reconsider and amend.  This was the rule prior to the amendments to the Federal Rules of Appellate Procedure effective December 1, 1993.  Under Fed.R.App.P. 4(a)(4), as amended, the claimant's

4

notice of appeal is treated as merely dormant until the date the post-judgment motion is decided.[2] Thus, the government's position on this point is in error, and we will proceed to the merits of this appeal.

This court reviews the granting of summary judgment *de novo,* applying the same criteria used by the district court in its initial determination of the issues.[3] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] We review the evidence, "viewing the facts and inferences drawn from that evidence in the light most favorable to the nonmoving party."[5]

31 U.S.C. § 5316 requires that any person transporting monetary instruments worth more than $10,000 into the United States file a report containing certain information.[6] Section 5317(c) authorizes the Government to seize and obtain judicial forfeiture of monetary instruments not properly declared at the border in

_____

[2]*See Burt v. Ware,* 14 F.3d 256 (5th Cir.1994).

[3]*MacMillan v. United States,* 46 F.3d 377, 380 (5th Cir.1995).

[4]*Id. (citing* Fed.R.Civ.P. 56(c)).

[5]*Id.*

[6]31 U.S.C. § 5316(a), (b).

5

accordance with section 5316.[7]  The Government bears "the initial burden of demonstrating the existence of probable cause to seize the violating currency."[8]  Probable cause is the "reasonable ground for belief of guilt supported by less than *prima facie* evidence but more than mere suspicion";  it may be proved by circumstantial or hearsay evidence.[9]  Once probable cause has been established, the burden of proof shifts to the claimant to prove a defense by the preponderance of the evidence.[10]

The claimant argues that the district court erred in granting summary judgment because genuine issues of material fact exist, including (1) whether the claimant and his daughter are innocent owners of the currency, (2) whether Ms. Sivaskandan had any ownership rights in the currency, and (3) whether the claimant or his daughter had any knowledge of, or assisted the efforts of, Ms. Sivaskandan's attempt to bring the currency into the United States without declaring it.

The claimant does not contest the district court's implicit determination that the Government had probable cause to seize the currency.  Instead, the claimant argues that the currency should not be subjected to forfeiture because he and his minor daughter were in fact the "innocent owners" of the currency, relying on

---

[7]*United States v. $400,000 in U.S. Currency,* 831 F.2d 84, 86-87 (5th Cir.1987).

[8]*Id.* at 87 (internal quotation and citation omitted).

[9]*Id.*

[10]*Id.* at 88.

*Calero-Toledo v. Pearson Yacht Leasing Co.*[11]

As we have previously recognized,[12] in *Calero-Toledo,* the Supreme Court held constitutional a Puerto Rican forfeiture statute even though it did not exempt property of an owner who was neither involved in nor aware of the act of his lessee that resulted in the forfeiture. In fact, after *Calero-Toledo* there can be no doubt that Congress has the authority to provide for the forfeiture of an innocent party's property where such forfeiture serves a legitimate governmental purpose, such as deterring the type of illegal activity in which the property was involved. The Court noted that "[t]o the extent that such forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property."[13] It could not be clearer, therefore, that *Calero-Toledo* did not create a general "innocent owner" defense to statutory forfeiture.

However, in dicta, the Court conceded that there could be circumstances under which the "broad sweep" of forfeiture statutes could give rise to serious constitutional questions. The court said

> it would be difficult to reject the constitutional claim of an
> owner whose property subjected to forfeiture had been taken

---

[11]416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

[12]*See United States v. Eighty-three Rolex Watches,* 992 F.2d 508, 517 (5th Cir.1993).

[13]*Calero-Toledo,* 416 U.S. at 687-88, 94 S.Ct. at 2094.

7

from him without his privity or consent. Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive.[14]

At most, this language recognizes that there may be a subclass of innocent persons to whom forfeiture provisions could not be applied constitutionally. The burden of establishing that he is a member of that subclass rests with the claimant. In this case, Mr. Sivaskandan has not met that burden.

It is insufficient to prove that he was in fact "innocent" or that he did not know about or aid in the illegal activity. It is also insufficient to prove that Veena Sivaskandan did not have ownership rights in the currency. The claimant would have had to produce evidence that the property had been taken from him without his privity or consent, or that he had done all that could reasonably be expected to prevent the proscribed use of the property to implicate the constitutional concerns the Supreme Court alluded to in *Calero-Toledo.* The claimant produced no such evidence.

Because the claimant did not establish the existence of a genuine issue of material fact, the district court did not err in granting the Government's motion for summary judgment.

### III. CONCLUSION

For the reasons given above, the judgment of the district

---

[14]*Calero-Toledo,* 416 U.S. at 688-90, 94 S.Ct. at 2094-95.

court is AFFIRMED.