UNITED STATES of America Plaintiff,

v.

TWENTY–THREE THOUSAND NINETY DOLLARS ($23,090.00) IN UNITED STATES CURRENCY, Defendant.

No. 03–62218–CIV–ZLOCH.

United States District Court,
S.D. Florida.

June 30, 2005.

William Beckerleg, Jr., AUSA, Fort Lauderdale, FL, for Plaintiff.

Patrick G. McDonald, Miami, FL, for Claimant Saintpreux.

## FINAL JUDGMENT OF FORFEITURE

ZLOCH, Chief Judge.

THIS MATTER was tried before the Court without a jury on May 3, 2005. At said trial, the Court heard opening statements and closing arguments from the parties and testimony from witnesses. The Court has carefully reviewed the record herein and is otherwise fully advised in the premises.

### I. *Background*

The above-styled cause commenced with a Complaint For Forfeiture In Rem (DE 1) filed by the United States on December 15, 2003. In said Complaint (DE 1), the United States alleges that Defendant Currency (hereinafter the "Currency") is forfeitable pursuant to 31 U.S.C. § 5317(c)(2) (2003) as currency involved in a currency reporting violation in violation of 31 U.S.C. § 5316 (2003) and as currency involved in an attempted transaction which was structured in amounts under $10,000.00 to evade the currency reporting requirements under 31 U.S.C. § 5324(c)(3) (2003). In addition, the United States asserts that pursuant to 31 U.S.C. § 5332(c)(1) (2003) the currency is forfeitable as it was knowingly concealed on the person, or in articles of luggage or other container, and attempted to be transported from within the United States to a place outside the United States in violation of 31 U.S.C. § 5332(a)(1) and (2).[1] A Warrant For Arrest In Rem (DE 3) was issued for the Currency on December 17, 2003, and subsequently executed on December 19, 2003 (DE 4).

Claimant St. Juse Saintpreux (hereinafter "Saintpreux") filed an Answer (DE 11) on April 12, 2004, asserting ownership to $17,000.00 of the Currency. In said Answer (DE 11), Saintpreux states that he gave three separate envelopes to three separate individuals to be taken to Haiti. Saintpreux further states that the envelopes indicated that they were from him, and concludes,

I was aware that a person was not allowed to carry more than $10,000.00 to Haiti without completing certain forms and I obeyed the law because the money was for three different people for three

---

1. The Court notes that while the United States in its Complaint (DE 1) asserts that the Currency is forfeitable pursuant to 31 U.S.C. § 5332(a)(1) and (2), the United States did not address this claim in either its Proposed Findings Of Fact And Conclusions Of Law (DE 23) or its Trial Brief (DE 25), and did not present evidence in support this claim at trial. Accordingly, the Court declines to address this claim.

different reasons and all of the amounts were below the $10,000.00 maximum amount and were carried by different people. The paperwork is a little bit of a nuisance so I have always been careful not to send more than $10,000.00 with a friend that I trust. However, there was nothing wrong with what I did or what I have been doing. The money was not in any way involved, used, or acquired as a result of drugs or a drug related offense of any kind.

DE 11, ¶ 16.

Upon the Stipulation Of Settlement filed by the United States and Claimant Jolius Jacques (DE 14), the Court entered a Final Order Of Dismissal (DE 15) as to Claimant Jolius Jacques (hereinafter "Jacques") on April 16, 2004. In that Order, the Court also approved the terms of the Stipulation wherein, among other things, the parties agreed that $5,400.00 was to be returned to Jacques, and $600.00 was to be forfeited. Seventeen thousand dollars ($17,000.00), the remaining balance of the monies, are the monies in litigation before the Court and claimed by Saintpreux.

## I. *Findings of Fact*

Based on the pleadings, testimony, and other evidence presented at trial, the Court makes the following findings of fact. Saintpreux is a barber who has traveled back and forth to Haiti numerous times since coming to the United States in 1982. In addition to traveling to Haiti, Saintpreux wired funds from the United States to Haiti in the past and acknowledged that he was aware of the requirement to complete certain forms when carrying more than $10,000.00 outside of the United States.

Sometime prior to August 29, 2003, Saintpreux asked Jacklin Nelson (hereinafter "Nelson"), Rene Vedrine (hereinafter "Vedrine") and Edeide Pierre Louis (hereinafter "Louis") to take something for him to Haiti; all three individuals agreed to do so. By his own testimony, Saintpreux packaged $5,000.00, $5,000.00, and $7,000.00, in United States currency, in separate envelopes which he sealed and on which he wrote that the envelopes came from him. *See* DE 11, ¶ 16.

Nelson, Vedrine, and Louis, along with Saintpreux and Wilmere Gabriel (hereinafter "Gabriel") met in a parking lot on August 29, 2003, where Saintpreux gave Gabriel the three sealed envelopes that he had prepared with the instructions to give the envelopes to Nelson, Vedrine, and Louis and to tell them that someone in Haiti would be waiting for them at the airport. Saintpreux did not tell Gabriel what was in the envelopes. Gabriel, in turn, distributed the three envelopes, one to Nelson, one to Vedrine, and one to Louis.

Gabriel, Nelson, Vedrine, and Louis then departed from the parking lot and went to Fort Lauderdale–Hollywood International Airport (hereinafter the "Airport") where they attempted to board Lynx Air Flight 103 (hereinafter "Flight 103") bound for Cap Haitian, Haiti. Prior to boarding, United States Immigration and Customs Enforcement (hereinafter "ICE") Agent Stephen Cole conducted an outbound currency operation during which he advised passengers of the currency reporting requirement and inspected the passengers of Flight 103 for travel documents and packages. The inspection revealed that Nelson, Vedrine, and Louis were carrying identical padded, sealed, yellow envelopes with identical writing on the outside of said envelopes. It was discovered that the envelope (Trial Ex. 1) carried by Louis con-

tained $5,000.00 in U.S. currency, the envelope (Trial Ex. 2) carried by Vedrine contained $5,000.000 in U.S. currency, and the envelope (Trial Ex. 3) carried by Nelson contained $7,000.00 in United States currency. Nelson, Vedrine, Louis, and Gabriel were interviewed by Agent Cole, and Gabriel directed Agent Cole to Saintpreux as being someone who possessed information regarding the seized currency.

On September 19, 2003, Agent Cole, along with Special Agent Richard Milla, also of ICE, interviewed Saintpreux in his barbershop regarding the currency seized on August 29, 2003 at the Airport. During the interview, when asked three times in three different ways whether he was aware of the requirement to report currency in excess of $10,000 when taken outside of the United States, Saintpreux answered in the affirmative all three times. Agent Milla testified that Saintpreux stated that he was sending the funds to Haiti via three different individuals in order to avoid the reporting requirements. While the agents questioned Saintpreux in English, Cole and Milla both testified that Saintpreux answered sometimes in English and sometimes in Creole. In addition, the agents testified that there was a young lady present at the time of questioning who spoke Creole and was available to translate their questions for Saintpreux if needed.

Turning to the issue of currency ownership, the Court notes that Saintpreux's son, Mahum Saintpreux (hereinafter "Mahum"), and nephew, Rolex Saintpreux (hereinafter "Rolex"), testified that Saintpreux lent each of them money to send back to family in Haiti. Mahum testified that he did not discuss with his father how the money was to be sent to Haiti nor did he ever see the funds that were lent to him. Mahum further testified that he

made no effort to repay the funds because he did not consider himself responsible to repay since the funds were seized. In addition, Mahum stated that, in a way, he considered the funds as belonging to his father and further stated that he did not know the exact amount of money seized by the Government.

Rolex testified that he borrowed money from his uncle, and Saintpreux testified that it was he who had offered this money to his nephew. Like his cousin, Rolex was not aware of how the funds would get to Haiti and never received the money. Further, Rolex stated that he considered the money to belong to his uncle, and if the money had reached his mother in Haiti he would have then considered the funds his. Finally, Saintpreux, himself, testified that he was the owner of the funds.

The Court finds that there was no transfer or delivery of funds from Saintpreux to Mahum or to Rolex as evinced by neither Mahum nor Rolex seeing the funds or knowing when or how the funds were to be sent to Haiti. Further, there has been no repayment or stated intent of repayment by either Mahum or Rolex. Finally, Mahum and Rolex both stated that they believe the funds, at least in part, belong to Saintpreux who is the only claimant of the three in the above-styled cause. Therefore, the Court finds that Saintpreux was the owner of the Currency and exercised control over the Currency in attempting to send it to Haiti regardless of whether the arrangements between Saintpreux and Rolex and between Saintpreux and Mahum constitute loans.

III. *Conclusions of Law*

■ A person is required to file a currency transaction report when said person or his agent, "knowingly transports, is

about to transport, or has transported, monetary instruments of more than $10,000 at one time from a place in the United States to or through a place outside the United States." 31 U.S.C. § 5316(a)(1)(A). This reporting requirement applies to

> [e]ach person who physically transports ... or causes to be physically transported ... currency or other monetary instruments in an aggregate amount exceeding $10,000 at one time from the United States to any place outside the United States .... A person is deemed to have caused such transportation ... when he aids, abets, counsels, commands, procures, or requests it to be done by a financial institution or another person.

31 C.F.R. § 103.23 (2005). In fleshing out what it means for a person to transport currency "at one time," 31 C.F.R. § 103.11 (2005) sets forth the following criteria:

> (1) That person either alone, in conjunction with or on behalf of others; ·
>
> (2) Transports, mails, ships or receives in any manner; is about to transport, mail or ship in any manner; or causes the transportation, mailing, shipment or receipt in any manner of;
>
> (3) Monetary instruments;
>
> (4) Into the United States or out of the United States;
>
> (5) Totaling more than $10,000;
>
> (6)
>
>> (i) On one calendar day or
>>
>> (ii) if for the purpose of evading the reporting requirements of section 103.23, on one or more days [and therefore in violation of 31 U.S.C. § 5324].

Also, in order to be found in violation of 31 U.S.C. § 5316, an individual must have knowledge of the reporting requirement. *U.S. v. One Lot of Twenty–Four Thousand Nine Hundred Dollars in U.S. Currency,* 770 F.2d 1530 (11th Cir.1985).

■ In addition to the required reporting, "[n]o person shall, for the purpose of evading the reporting requirements of section 5316 structure or assist in structuring, or attempt to structure or assist in structuring, any importation or exportation of monetary instruments." 31 U.S.C. § 5324(c)(3). Structuring occurs when an individual alters his transaction in such a way in order to avoid the reporting requirement. *U.S. v. Davenport,* 929 F.2d 1169 (7th Cir.1991). *See also U.S. v. Ahmad,* 213 F.3d 805, 809 (4th Cir.2000) (finding that deposits that were structured to avoid the reporting requirement violated 31 U.S.C. § 5324).

■ Any funds involved in a failure to file a currency transaction report or in an attempt to evade the requirement that such a report be filed, "may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code." 31 U.S.C. § 5317(c)(2). The Court notes that the United States may seek civil forfeiture even in the absence of criminal liability. *Ahmad,* 213 F.3d at 809 (4th Cir.2000).

■ In order to support seizure and forfeiture of currency, the Government bears the initial burden of showing probable cause for violation of the statute requiring the filing of a report for transportation of more than $10,000.00 in U.S. currency out of the United States, *U.S. v. One Hundred Twenty-four Thousand*

*Eight Hundred Thirteen Dollars ($124,813) in U.S. Currency,* 53 F.3d 108 (5th Cir.1995), and of establishing by preponderance of the evidence that said currency is subject to forfeiture, 18 U.S.C. § 983(c)(1) (West Supp.2004). The burden then shifts to the claimant to establish that the currency was not subject to violations of the customs laws. *U.S. v. Twenty Thousand Seven Hundred Fifty–Seven Dollars and Eighty–Three Cents ($20,757.83),* 769 F.2d 479 (8th Cir.1985). In particular, the claimant may assert that he is an "innocent owner" of the property. In order to establish innocent owner status, an individual must show by a preponderance of the evidence that he did not have knowledge of the conduct giving rise to the forfeiture or that upon learning of said conduct attempted to cease use of said property. 18 U.S.C. § 983(d)(2)(A) (West Supp.2004).

### A. Probable Cause

■ The Court finds that Agent Cole had probable cause to seize the currency in the envelopes carried by Nelson, Vedrine, and Louis. All three were attempting to board on outbound flight to Haiti and each was carrying virtually identical padded yellow envelopes. The envelopes each had the names "St Juse," "St Preux," "Alise," "Mama," and "Damas" written on the outside in the same handwriting with the same pen. In addition, no currency reporting form was filed for the $17,000.00 in United States currency in said envelopes, as is required for transportation of currency in excess of $10,000.00. Based on the totality of the circumstances, the Court finds that Agent Cole had probable cause to seize the Currency.

### B. Preponderance of the Evidence: 31 U.S.C. § 5316

■ The Court finds by a preponderance of the evidence that the Currency is property subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) as a violation of currency reporting requirement set forth in 31 U.S.C. § 5316. The Court further finds that Saintpreux had knowledge of the currency reporting requirements (DE 11, ¶ 16), and Nelson, Vedrine, and Louis were acting as Saintpreux's agents in an attempt to transport currency in excess of $10,000.00 outside of the United States to Haiti.

### 1. Knowledge of the Reporting Requirements

The Court finds that Saintpreux had knowledge of the reporting requirements. Saintpreux, by his own admission, knew of the reporting requirement as evinced by his Answer (DE 11) and the testimony of Agents Cole and Milla at trial.

### 2. Agency and Causation

■ The Court finds that Vedrine, Louis, and Nelson were agents of Saintpreux. An agency relationship exists if the principal acknowledges that the agent will act for him, the agent accepts the undertaking, and the principal exercises control over the agent's actions. *Whetstone Candy Co. v. Kraft Foods, Inc.,* 351 F.3d 1067, 1077 (11th Cir.2003); *Enic v. F.F. South & Co.,* 870 So.2d 888, 891 (Fla. Dist.Ct.App.2004). Saintpreux testified that Nelson, Vedrine, and Louis were acting on his behalf, and that he instructed Gabriel to hand the envelopes to the aforementioned individuals. Further, Nelson and Vedrine testified that they accepted the envelopes and were taking them to Haiti as a favor to Saintpreux. Finally, the Court finds that Saintpreux exercised control over his agent's actions by arranging for Nelson, Vendrine, and Louis to carry the envelopes for him, compiling the

envelopes, instructing Gabriel to give the envelopes to the individuals with the instruction that someone would meet them in Haiti. Therefore, the Court finds that Nelson, Vedrine, and Louis, in attempting to transport the envelopes with currency to Haiti, were acting as Saintpreux's agents.

By enlisting Nelson, Vedrine, and Louis, the Court finds that Saintpreux "caused" currency to be transported by commanding and procuring other persons to take the currency or other monetary instruments in an aggregate amount exceeding $10,000 at one time from the United States to any place outside the United States. *See* 31 C.F.R. § 103.23. The Court further finds that Saintpreux, individually or through his agents, failed to report the Currency, the amount of which exceeded $10,000.00, and that he was attempting to send outside of the United States to Haiti. Therefore, the Court finds that Saintpreux has violated 31 U.S.C. § 5316(a)(1)(A), and the funds are subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2).

### B. *Preponderance of the Evidence: 31 U.S.C. § 5324*

The Court further finds by a preponderance of the evidence that the Currency is properly subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) as a violation of the anti-structuring provision set forth in 31 U.S.C. § 5324(c)(3). The Court finds that Saintpreux modified his activity to avoid the currency reporting requirements.

### 1. *Structuring*

The Court also finds by a preponderance of the evidence that Saintpreux structured his exportation of funds outside of the United States so as to avoid the reporting requirement set forth in 31 U.S.C. § 5316 in violation of 31 U.S.C. § 5324. As previously stated, Saintpreux was knowledgeable of the currency reporting requirements, and this fact is important because a person cannot attempt to evade a requirement of which he is not aware.

Both Agent Cole and Agent Milla testified that Saintpreux stated that he gave the funds to three different individuals to avoid filling out the currency reporting form. In addition to the agent's testimony, Saintpreux's own statement and actions evince that Saintpreux was attempting to evade the currency reporting requirement by attempting to send an aggregate of funds in excess of $10,000.00 to Haiti. In his Answer (DE 11), Saintpreux stated that the "paperwork [i.e. the reporting document] is a little bit of a nuisance so I have always been careful not to send more than $10,000.00 with a friend that I trust." DE 11, ¶ 16. Aware of the reporting requirements and deeming the paperwork that must be completed to comply with said requirements a "nuisance," Saintpreux attempted to send $17,000 in increments of $5,000.00, $5,000.00, and $7,000.00 on the same day, on the same flight to Haiti, and via three different persons who were his agents.

In addition, in his Proposed Findings Of Fact And Conclusions Of Law (DE 29), Saintpreux states that "[t]he first misinterpretation that the government makes is that more than one person contributed to the funds that were to be delivered to Haiti, and secondly more than one person was to receive those funds in Haiti, none of whom were to receive more than $10,-000.000; therefore the Claimant was legally justifiable [sic] in *avoiding* having to file

a currency report." *Id.* at 7 (emphasis added). By Saintpreux's own admission, he was avoiding the currency reporting requirements. While Saintpreux testified at trial that he placed the funds in three separate envelopes for safety reasons, the Court notes that Saintpreux had experience in sending money to Haiti via a wire transfer. Further, even if Saintpreux had placed the funds in separate envelopes for safety reasons, the Court finds that this does not undermine Saintpreux's assertion that he found the reporting requirement a nuisance, that he was "avoiding having to file a currency report," and that he told Agents Cole and Milla that he was sending funds via three different individuals so as to avoid the reporting requirements. The Court finds that the evidence of Saintpreux's statements and actions, in conjunction with Agent Cole's and Agent Milla's testimony, support a finding by a preponderance of the evidence that Saintpreux attempted to send funds to Haiti in order to avoid the currency reporting requirement in violation of 31 U.S.C. § 5324(c)(3) thereby making the funds subject to forfeiture pursuant 31 U.S.C. § 5317(c)(2).

▆ The Court rejects Saintpreux's contention that he "obeyed the law because the money was for three different people for three different reasons and all of the amounts were below the $10,000.00 maximum amount and were carried by different people." *Id.* In support of his assertion that his actions were legally justified, Saintpreux cites an unreported case from the United States District Court for the Southern District of New York, *U.S. v. $35,520 United States Currency,* 1990 WL 80054 (S.D.N.Y. June 1, 1990). In the aforementioned case, the Southern District of New York denied the United States's motion for summary judgment finding that

the claimant and his wife, who each had $10,000.00 into the United States, were not required to report the funds because each individual is permitted to bring up to and including $10,000.00 into the United States before required to report to report the funds. Saintpreux contends that "for the reporting requirement for currency in excess of $10,000.00 to be subject to forfeiture those funds must be sent and delivered to one person, by one person, not as we have in this case where several different people entered into separate agreements to each provide money for different people." DE 29, pp. 8–9. As the Court has previously noted, Nelson, Vedrine, and Louis were agents acting on behalf of Saintpreux. Second, the currency reporting statute and relevant Federal Regulation Sections do not speak in terms of the recipient of funds, but rather in terms of the source of funds. The singular nature focuses on the source of the funds in excess of $10,000.00 whether the funds are brought into the United States or attempted to be taken outside the United States as in the above-styled cause. *See* 31 C.F.R. § 103.23. Unlike the individual in the Southern District of New York case who received funds from people who individually brought in $10,000.00 each, Saintpreux is the source of the funds in the above-styled cause, as previously stated, and said funds are in excess of $10,000.00. The recipients of the funds are not required to report funds, but the person who is transporting or attempting to transport currency in excess of $10,000.00 out of or into the United States either individually or via his agents is required to report funds. *See* 31 U.S.C. § 5316. Therefore, the Court finds that Saintpreux's contention that he was legally justified in his attempt to avoid the currency reporting requirement is incorrect and not a viable defense to forfeiture of the Currency.

### IV. *Conclusion*

The Court finds that Saintpreux has violated 31 U.S.C. § 5316 by failing to report currency in excess of $10,000.00 which he attempted to have transported outside of the United States thereby making the funds forfeitable pursuant to 31 U.S.C. § 5317. In addition, the Court finds that Saintpreux has violated 31 U.S.C. § 5324 by structuring his attempted transport of currency in excess of $10,000.00 outside of the United States in order to avoid the reporting requirement set forth in 31 U.S.C. § 5316 thereby making the funds forfeitable pursuant to 31 U.S.C. § 5317.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Pursuant to Title 31, United States Code, Section 5317(c)(2) and the terms of this Order, Claimant St. Juse Saintpreux's right, title, and interest in $17,000.00 of Defendant Currency be and the same is hereby **FORFEITED** to the United States of America; and

2. The claim of Jolius Jacques to Defendant Currency shall be satisfied in accordance with the terms of the Stipulation of Settlement (DE 14) filed with the Court on April 14, 2004.